**Erna E. CLONCH, Petitioner,**

v.

**Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.**

**Civ. A. No. C-67-56-E.**

United States District Court
N. D. West Virginia.

July 22, 1968.

J. Fred Queen, Elkins, W. Va., for petitioner.

C. Donald Robertson, Atty. Gen. of West Virginia, Morton I. Taber, Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

Petitioner, who is presently incarcerated in the West Virginia State Penitentiary, is serving the life sentence ordered by the Common Pleas Court of Cabell County on August 27, 1937. The sentence was imposed after Petitioner entered a plea of guilty on June 14, 1937, to the indictment charge of rape.

Pursuant to Title 28, § 2254, United States Code, Petitioner applied for a writ of federal habeas corpus in this court to challenge the constitutionality of his arraignment and sentencing. Petitioner contends that he was without counsel and was not warned of his right to counsel or the consequences of his plea. The issue to be resolved by this Court is whether Petitioner, in fact, was represented by counsel at these critical stages in his conviction process.

On the basis of the evidence presented in the record and at Petitioner's plenary hearing in Elkins on May 10, 1968, it is this Court's determination that Petitioner has not met his burden of proof. The records of the orders entered by the Common Pleas Court of Cabell County in Petitioner's case recite that Petitioner

appeared with counsel.[1] Several attorneys familiar with the practice of the Common Pleas Court at the time of the proceedings against Petitioner testified in depositions that, although they did not recall the proceedings against Petitioner, they knew that the general practice of the trial judge was to appoint counsel for persons accused of serious offenses if such persons did not have counsel.

Petitioner introduced no conclusive facts to rebut the record and testimony on this point. The fact that, after thirty-one years, there is no record of the identity of his counsel and the fact that none of the persons questioned recalls Petitioner's case raises some doubt as to the existence of counsel, but this supposition does not prove the allegation.

The contention that Petitioner was one of seventy to ninety persons brought into the court for arraignment on the first day of a new term of court, and that Petitioner entered his plea one-half hour after court convened, again raises a question as to whether Petitioner had counsel when he entered his plea. Again this is not conclusive, in light of the record and the testimony as to the policy and practice of the trial court.

The newspaper account of Petitioner's sentencing [2] which quotes statements by the trial judge that Petitioner was mentally defective indicates Petitioner

1. Petitioner's Exhibit #2, the order of June 14, 1937: "This day came * * * and the defendant Erna Edward Clonch in person and by Counsel and for his plea says he is Guilty as Charged in the within indictment * * *."
  Petitioner's Exhibit #3, the order of June 25, 1937: "This day came again * * * and the defendant in person and by counsel, * * * and thereupon the Court deferred passing sentence to a later date."
  Petitioner's Exhibit #4, the order of August 27, 1937: "This day came * * * the Defendant, Erna Edward Clonch, in person and by counsel and for the plea in his behalf says he is guilty as charged in the indictment returned against him.
  "Thereupon the Court proceeded to pronounce sentence and ascertains and fixes the same at confinement in the penitentiary of this State at Moundsville, West Virginia, for the remainder of his natural life."

2. Respondent's Exhibit #3-A:
  Huntington Herald-Dispatch, August 28, 1937:
  "YOUTH IS GIVEN LIFE SENTENCE IN ATTACK CASE
  "Warth Declares Laws of State 'Inadequate' in Sex Crimes
  "A 16-year-old country youth who pleaded guilty to criminal assault of a 47-year-old unmarried woman, was sentenced to life imprisonment yesterday morning by Judge H. Clay Warth of common pleas court.
  "The youth, Ernie Clonch of Grapevine Creek, in Cabell County, received the sentence without comment. He made no attempt to change his former plea of guilty.
  "Judge Warth, before sentencing the lad, declared that the 'Laws of this state are wholly inadequate to deal with such cases and this court is helpless.'
      "Addresses Lawyers
  "Addressing a group of attorneys who were in the court room, including Prosecuting Attorney E. E. Winters, Jr. Judge Warth said:
  " 'This is a pitiful case, I've had this boy examined by two competent physicians and there is no question that he is mentally defective. Their reports to me show that his defectiveness leans toward sexual tendencies with homicidal propensities.
  "Under ordinary circumstances an asylum would be the proper place for this boy. Under the laws of our state, however, we have no method of taking care of such cases. The doctors tell me that he should be confined.
  "There are so many sexual crimes being committed all over this country and society must be protected. We will have more of these cases unless we do something about them.
      "Laws Held Inadequate
  "The present laws of this state are wholly inadequate to deal with such cases and this court is helpless."
  "Mr. Winters, speaking generally to the court and to others in the courtroom, said:
  " 'The state will spend millions of dollars to sell whiskey to help make people crazy but will not do anything to take care of such cases later.' "

may have had a defense to the charge. However, such statements do not prove Petitioner had a legally sufficient defense and had no counsel. While such statements do raise a question about the presence of an attorney, they also indicate the trial judge was informed about Petitioner's case and that he carefully considered it.

█ It is the opinion of this Court that the record of the orders entered at the time Petitioner entered his plea and was sentenced, corroborated by the testimony as to the practice and policy of the trial court regarding the appointment of counsel for persons charged with serious offenses, weigh in favor of finding Petitioner was represented by counsel and was accorded due process and equal protection of the law.

In addition to the principal determination and discussion of this case is the fact that Petitioner did not make his initial inquiry as to the identity of his counsel until he wrote to the Clerk of the Courts of Cabell County to ask the name of his counsel in December, 1958. His second inquiry, to the State Auditor's office, was not made until June, 1964. He did not petition this court originally until 1965, and that petition was dismissed. It is within the bounds of fairness to find that the motive for such a long delay in alleging a violation of his constitutional rights was to wait until positive proof of the existence of an attorney would be impossible to find. For this reason the actual records must be given verity in this case. Otherwise, unsupported suppositions would be controlling.

█ The fact that Petitioner was a juvenile at the time of the offense in 1937 does not make the proceedings in the Common Pleas Court improper. In 1937 rape was a capital offense (West Virginia Code, Chapter 61, Article 2, Section 15) and the juvenile court was without jurisdiction (West Virginia Code, Chapter 49, Article 5, Section 3). The Common Pleas Court was the proper court to try Petitioner.

For the reasons set out above, Petitioner's claimed deprivations are determined not to raise or fairly suggest questions of constitutional proportions. An order will be entered denying relief and dismissing the petition.